E-FILED on 10/31/2013

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>MELVIN RUSSELL "RUSTY" SHIELDS, MICHAEL SIMS and SAM STAFFORD,<br><br>Defendants. | ORDER RE GOVERNMENT'S MOTION TO PRECLUDE ADVICE OF COUNSEL DEFENSE AND DEFENDANT SIMS' MOTION TO SEVER<br><br>[Dockets Nos. 134 and 147] |

I

The parties' positions raise issues that implicate the attorney-client privilege. The Government is concerned that defendant Shields will attempt to present an "advice of counsel defense" but take the position that his communications with Attorney Chapman, the former attorney for S3 are privileged. Shields asserts that he does not intend to present an "advice of counsel" defense but does claim that S3's use of Attorney Chapman as its attorney tends to suggest that Shields acted in good faith thus negating an intent to defraud. Defendant Sims, in contrast to defendant Shields, wants to offer evidence, which without question would invade any attorney-client protection S3 maintains as to communications with Attorney Chapman. Sims states that "the evidence will show that Michael Sims sought the advice and assistance of Mr. Chapman in

December 2007, when he realized S3 was not being operated in an appropriate fashion, in particular that Mr. Sims sought advice on terminating his relationship with the other members of S3 and insuring that appropriate accounting controls were in place." Def. Sims' Mot. in Lim. #2 (Docket # 147). The attorney-client privilege and other issues raised by these contentions will be discussed in turn.

II

The Government essentially argues that defendant Shields may claim at trial that the defendants made certain representations to investors, structured their business and took certain actions only after being told by their attorney, James Chapman, that such actions were permissible. Govt. Mot. in Lim. #2 (Docket # 134). The Government claims that allowing Shields to do this without waiving the attorney-client privilege would allow Shields to suggest that by following his lawyer's advice he acted in good faith without providing the Government the opportunity to examine the specifics of the advice given and the facts on which it was based. Shields thus would be using the attorney-client communications as a sword (negating *mens rea*) and a shield (by claiming privilege as to any attempt by the Government to find out what Shields was advised).

Defendant Shields argues that he does not intend to raise an "advice of counsel" defense[1] but rather wants to refer to S3's hiring of Attorney Chapman just as one general factor suggesting defendants were running their business in good faith. Shields would not offer evidence of communications with counsel or advice given.

The fact that the defendants hired a lawyer to form and advise them in the operation of the business has some relevance to defendants' good faith and does not waive the attorney-client privilege. *See United States v. White*, 8878 F.2d 267, 269-71 (D.C. Cir. 1989); *United States v. Gasparik*, 141 F.Supp2d 361, 371-372 (S.D.N.Y. 2001). However, defendants cannot go further and claim or imply they acted in good faith because they followed their lawyer's advice with respect to specific actions without waiving any attorney-client privilege. Where a party takes a position which

---

[1] Shield's maintains that advice given S3 by its attorney cannot be waived without an affirmative showing that S3 in whatever form it now exists consents to a waiver. *See infra* re the ownership of the privilege and whether if can be waived in this case.

ORDER RE GOVERNMENT'S MOTION TO PRECLUDE ADVICE OF COUNSEL DEFENSE AND DEFENDANT SIMS' MOTION TO SEVER [Dockets Nos. 134 ad 147]

1 in fairness requires disclosure of the protected communication, the privilege is implicitly waived.
2 *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).  In this case, if the defense
3 were to ask any questions that suggest that Attorney Chapman reviewed and approved any action
4 that is the subject of the charges, there would be an implicit waiver of the attorney-client privilege.
5 Shields, assuming he has the ability to waive the privilege, does not intend or desire to waive the
6 privilege and thus must limit his questioning so as not to suggest or imply that Attorney Chapman
7 reviewed or approved the actions of defendants which are the subject of the indictment.

### III

The evidence that Sims wants to offer presents both attorney-client privilege issues and some hearsay and fairness issues.  If Sims were to elect not to testify and Attorney Chapman were allowed to testify as to his communications with Sims, the jury would hear what Attorney Chapman said that Sims said on some critical issues (e.g., Sims' concerns about how S3 was being run and that Sims wanted to disassociate himself) but not hear directly from Sims.  The Government and Shields would not be able to cross-examine Sims on testimony that could be devastating to their respective positions.  Therefore, the court concludes that if Sims does not testify, the probative value of the evidence offered by Attorney Chapman would be substantially outweighed by a danger of unfair prejudice.

If Sims testifies, the potential prejudice to Shields and the Government by the disclosure of Attorney Chapman's communications with Sims would be substantially eliminated because Sims would explain his concerns and intended actions directly and not through Attorney Chapman and he would be subject to cross-examination. However, the fact that any prejudice would be minimized does not mean that the content of the communications between Sims and Attorney Chapman are not protected by the attorney-client privilege.  Therefore, the questions of whether the privilege exists, and if so, whether it has been waived, must be addressed.

All parties agree that an attorney-client relationship existed between Attorney Chapman and S3 and not between Attorney Chapman and any individual member, manager, or officer in his individual capacity.  The current status of S3 appears to be that it is dissolved.  Although the law as presented by the parties is not clear, it does not appear that the privilege was extinguished by any

dissolution. Therefore, the question arises as to who can waive the privilege. Shields asserts the privilege although he does not appear to be a member or owner of whatever entity, if any, remains of S3. It also appears that his assertion is for his individual interests and not that of the remaining entity. Sims acknowledges that he is no longer able to waive the privilege. Stafford has apparently indicated that he will waive the privilege but there has been no showing that he is a member of or owner of the remaining entity or that he would be waiving in his capacity as a fiduciary of the remaining entity as opposed to in an attempt to fully cooperate with the Government. The court is not prepared to find a waiver of the attorney-client privilege absent a showing of who currently owns or controls the privilege and that such person waives the privilege on behalf of the remaining S3 entity.

If there is no waiver, Sims asserts that his Sixth Amendment right to present his defense trumps the privilege. *See United States v. W.R. Grace*, 439 F.Supp. 2d 1125, 1142-43 (D. Mont. 2006) Although some cases mention the issue, no Supreme Court or Ninth Circuit precedent holds that the attorney-client privilege must necessarily yield to a defendant's Sixth Amendment right to present a privileged communication in support of his defense. The court does not find that the minimal potential prejudice to Sims if Attorney Chapman is not allowed to testify will result in any denial of constitutional rights.

The court also does not find severance of Sims and Shields' cases is necessary or appropriate to allow Shields to benefit from maintaining the privilege and Sims to benefit from being able to offer the otherwise protected evidence. Joint trials conserve funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing defendants to trial. *See Bruton v. United States*, 391 U.S. 123, 134 (1968). Those benefits outweigh the avoidance of any minimal prejudice resulting to Sims from a joint trial.

The reason that any prejudice resulting to Sims from a joint trial is minimal is revealed by a close look at what is and is not precluded by assertion of the attorney-client privilege. The attorney-client privilege protects only a communication between an attorney and a client, not the facts that are communicated. *Murdoch v. Castro*, 609 F.3d 983, 995 (9th Cir. 2010). The

ORDER RE GOVERNMENT'S MOTION TO PRECLUDE ADVICE OF COUNSEL DEFENSE AND DEFENDANT SIMS' MOTION TO SEVER [Dockets Nos. 134 ad 147]
4

attorney-client privilege does not "create a broad 'zone of silence' over" the subject matter of the communication. *Upjohn Co. v. U.S.*, 449 U.S. at 395.

> [T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. "The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Id.* at 395-96 quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831(D.C. Pa. 1962). Testimony by Attorney Chapman and the contents of his notes would presumably only verify that Sims had in late 2007 expressed certain concerns and asked for advice regarding disassociating himself from S3. Not only can Sims offer his own testimony on what concerns he had and what he wanted to do, he hired his own attorney after he spoke with Attorney Chapman. Sims can, of course, waive privilege as to his personal attorney, and thus both Sims and Attorney Bosomworth, who Sims apparently retained in early 2008, can testify about what Sims did or did not do to disassociate himself from the other S3 principals.

IV

For the reasons explained, the Government's motion to preclude Shields from presenting an "advice of counsel" defense is moot. The court's understanding is that Shields has no intention of presenting such a defense. The Government's motion was predicated on Shields attempting to offer evidence that suggested that Attorney Chapman had reviewed and approved the representations defendants made to investors and other aspects of S3's business practices that are at issue in this case. This Shields cannot do. However, Shields is not precluded from mentioning that S3 had a lawyer's assistance.

Sims' motion to sever is denied as severance is not necessary to protect Sims' Sixth Amendment right to present a full defense.

Dated: October 31, 2013

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

ORDER RE GOVERNMENT'S MOTION TO PRECLUDE ADVICE OF COUNSEL DEFENSE AND DEFENDANT SIMS' MOTION TO SEVER [Dockets Nos. 134 ad 147]